**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID METCALFE<br><br>Plaintiff,<br>v.<br><br>BIOMET, INC., BIOMET ORTHOPEDICS, LLC, BIOMET U.S. RECONSTRUCTION, LLC, and BIOMET MANUFACTURING, LLC<br><br>Defendants. | **OPINION**<br>Civ. No. 18-cv-456-WHW-CLW |

**Walls, Senior District Judge**

In this products liability action, Defendants Biomet, Inc., Biomet Orthopedics, LLC, Biomet U.S. Reconstruction, LLC, and Biomet Manufacturing, LLC (collectively, "Biomet") move to dismiss three counts of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 9. Plaintiff David Metcalfe opposes. ECF No. 26. Decided without oral argument under Federal Rule of Civil Procedure 78, the motion to dismiss is granted in part and denied in part.

## FACTUAL BACKGROUND[1]

Biomet designed, manufactured, marketed, and sold a medical prosthesis called the M2a Magnum Hip Metal-on-Metal Hip System (the "Device"). ECF No. 6 ("Am. Compl.") ¶¶ 1, 7, 9, 10, 12, 14. Metcalfe underwent hip replacement surgery in 2014 during which the Device was implanted. *Id.* ¶ 52.

[1] Unless stated otherwise, all facts are drawn from Metcalfe's Amended Complaint ("Am. Compl."), ECF No. 6. These facts are taken as true for the purpose of the Biomet's motion. *See Cuevas v. Wells Fargo Bank, N.A.*, 643 F. App'x 124, 125-26 (3d Cir. 2016) (quoting *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009)) ("[I]n deciding a motion to dismiss, all well-pleaded allegations . . . must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.").

The Device differs from typical hip implants in that it is lined with cobalt-chromium metal rather than polyethylene or plastic. *Id.* ¶ 20. According to Metcalfe, the cobalt-chromium lining leads to "prosthesis-derived metal wear debris" and/or "surface corrosion," and fluid accumulation and soft tissue and/or bone death inside the hip. *Id.* ¶ 30. These dangers were allegedly well-known as early as 1996, *see id.* ¶¶ 31-34, and Biomet was aware of them at all time relevant to this action, *id.* ¶ 37.

Biomet nonetheless marketed the Device as safe, effective, and superior to other hip replacement products. *Id.* ¶ 38. As example, a Biomet marketing brochure—that Metcalfe's orthopedic surgeon received—asserted that the Device "offers optimal joint mechanic restoration" and that studies "have shown no definitive correlation of negative health issues . . . from metal-on-metal implants" like the Device. *Id.* ¶¶ 39-40. Biomet also stated in 2011 in the Journal of Arthroplasty that the Device has a "revision rate" of "less than 2.5%." *Id.* ¶ 41. In sum, Biomet represented that the Device was safe.

Metcalfe alleges that the Biomet Device implanted in him was defective and that he required a second hip replacement surgery. *Id.* ¶ 54. As a result of the defective Device, Metcalfe claims he was harmed in several ways: permanent harm from severe metal poisoning and metallosis, medical complications typically associated with a second hip replacement, lost wages, and extra medical expenses. *Id.* ¶ 53.

Metcalfe sued Biomet for providing the allegedly defective Device to Metcalfe's original surgeon, and for causing Metcalfe physical and monetary harm. *Id.* ¶ 1. Metcalfe asserts claims for:

(i) design defect strict liability (Count 1);

(ii) inadequate warning strict liability (Count 2);

(iii) manufacturing defect strict liability (Count 3);

(iv) breach of express warranty (Count 4);

(v) negligence (Count 5); and

(vi) negligent misrepresentation (Count 6)

*Id.* ¶¶ 69-127. Biomet moves to dismiss Counts 4 through 6. ECF No. 9.

**STANDARD OF REVIEW**

Rule 12(b)(6) allows for dismissal where the non-moving party fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

**DISCUSSION**

**1. Negligence (Count 5) and Negligent Misrepresentation (Count 6)**

Biomet moves to dismiss Counts 5 and 6 because "strict liability has superseded negligence" and negligent misrepresentation causes of action under New Jersey's Product Liability Act, N.J.S.A. 2A:58C-1 *et seq.* (the "PLA"). ECF No. 9-1 at 3-8. According to

Biomet, "negligence is no longer a basis for liability under the PLA." *Id.* at 7. Metcalfe responds that he "will not contest [Biomet]'s arguments relating to" Counts 5 and 6. ECF No. 26 at 1 n.1.

Counts 5 and 6 are dismissed. The PLA is "the sole basis of relief under New Jersey law available to consumers injured by a defective product." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991). Consequently, Metcalfe cannot bring claims for negligence and negligent misrepresentation. *See Port Auth. of New York & New Jersey v. Arcadian Corp.*, 189 F.3d 305, 313 (3d Cir. 1999) (dismissing negligence claim "based solely on harm caused by defendants' allegedly defective products"); *Indian Brand Farms v. Novartis Crop Prot., Inc.*, 890 F. Supp. 2d 534, 547 (D.N.J. 2012) (dismissing negligent misrepresentation claim where "essential nature of Plaintiffs' case is in fact that of a traditional product liability action").

**2. Breach of Express Warranty (Count 4)**

Biomet also moves to dismiss Metcalfe's claim for breach of express warranty. An express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," "[a]ny description of the goods which is made part of the basis of the bargain," or "[a]ny sample or model which is made part of the basis of the bargain[.]" N.J.S.A. § 12A:2-313(1)(a)-(c). To state a claim for breach of express warranty under New Jersey law, Metcalfe "must properly allege (1) that [Biomet] made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. CV1713544WHWCLW, 2018 WL 4144683, at *15 (D.N.J. Aug. 29, 2018). Biomet argues that Metcalfe has not alleged "any

facts to suggest an express warranty existed," ECF no. 9-1 at 9, and that if any did exist, they did not become the basis of the parties' bargain, ECF No. 27 at 2-4.

Metcalfe contends that Biomet made express warranties regarding the Device in two places: (1) the Biomet marketing brochure and (2) the 2011 Journal of Arthroplasty article. ECF No. 26 at 5 (quoting Am. Compl. ¶¶ 39, 41). Biomet disagrees for several reasons: that Metcalfe does not allege he or his doctor ever read the 2011 Journal of Arthroplasty article, that the marketing brochure is insufficiently attributed, and that the marketing brochure's statements are mere puffery. ECF No. 27 at 2-4.

Regarding the 2011 Journal of Arthroplasty article, Metcalfe fails to allege that he or his doctor saw the article before the Device was implanted. Am. Compl. ¶ 41. This is fatal to his breach of express warranty claim regarding this statement.

In New Jersey, "a plaintiff effectuates the 'basis of the bargain' requirement of section 2-313 by proving that she read, heard, saw or knew of the advertisement containing the affirmation of fact or promise." *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 567 (3d Cir. 1990), *overruled on other grounds*, 505 U.S. 504 (1992). Because the 2011 Journal of Arthroplasty article is "neither a written warranty delivered to the purchaser in connection with a sale nor an oral affirmation of fact or promise made to the purchaser in person by the seller," Metcalfe must plead[2] that he (or his doctor) saw Biomet's statement. *Id.* n.29. *Compare In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *27 (D.N.J. July 29, 2015) (dismissing breach of express warranty claim where "Plaintiffs have not alleged that any of the Plaintiffs saw or relied upon the alleged marketing statements"), *with*

---

[2] *Cipollone* involved defective jury instructions, so the plaintiff needed to prove, rather than simply plead, that his late wife (the injured party) had seen the advertisement. 893 F.2d at 567. As discussed below, this requirement is equally applicable at the motion to dismiss stage.

*Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 455 (D.N.J. 2015) (plaintiffs who "alleged that they were exposed to specific affirmations of fact in product brochures, videos and internet marketing" stated claim for breach of express warranty). He has not done so. The 2011 Journal of Arthroplasty article cannot support his breach of express warranty claim.

Some courts in this district have reached the opposite conclusion—namely, that whether the plaintiff saw an alleged warranty and by extension whether that warranty became a basis of the bargain is inappropriate for resolution at the motion to dismiss stage. *See McDonough v. Bayer Healthcare, LLC*, No. CIV. 10-442, 2011 WL 2119107, at *4 (D.N.J. May 26, 2011) ("At this stage, it is sufficient that Plaintiff has pleaded alleged warranties that plausibly could have been the basis of the bargain."); *Smith v. Merial Ltd.*, No. CIV. 10-439, 2011 WL 2119100, at *7 (D.N.J. May 26, 2011) (same). This Court disagrees. Both decisions cite *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. CIV03-4558(HAA), 2008 WL 4126264, at *5 (D.N.J. Sept. 2, 2008) for the proposition that "whether an alleged warranty was the basis of the bargain cannot be resolved on a motion to dismiss[.]" *See McDonough*, 2011 WL 2119107, at *4; *Smith*, 2011 WL 2119100, at *7. *In re Ford* did not involve a question as to whether the plaintiff had seen the alleged representation that Ford's vehicle was a "15-passenger" van, but whether the plaintiff relied on Ford's warranty that the van could safely seat 15 people in making its purchasing decision. 2008 WL 4126264, at *3-5. *In re Ford* does not adequately support *McDonough*'s and *Smith*'s conclusions that *any* benefit of the bargain determination is premature on a motion to dismiss.

Instead, logic compels the conclusion the Court reaches today. A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if a plaintiff does not plead that he saw

the alleged warranty, then a court cannot *reasonably* infer that the warranty formed a basis of the bargain. One court in this District recently granted a motion to dismiss on these grounds. *See In re: Elk Cross Timbers Decking Mktg.*, 15-cv-18 (JLL), 2015 WL 6467730, at *29 (D.N.J. Oct. 26, 2015) (dismissing breach of warranty claim because plaintiffs "failed to plead which, if any, representations [] Plaintiffs were aware of"). As the *Cipollone* court explained, "It strains the language to say that a statement is part of the 'basis' of the buyer's 'bargain,' when that buyer had no knowledge of the statement's existence." 893 F.2d at 567.

Because Metcalfe did not plead that he or his surgeon was aware of the 2011 Journal of Arthroplasty article, statements made in that article are not actionable.

Regarding the Biomet marketing brochure, the Court discerns three statements contained within the passage quoted by Metcalfe: (1) the Device "offers optimal joint mechanical restoration," (2) the Device "offers . . . ultra low -wear rates [*sic*] in vivo," and (3) "[m]any studies conducted over the last several decades have shown no definitive correlation of negative health issues to ion levels exhibited from metal-on-metal implants." Am. Compl. ¶ 39.[3] Biomet contends that the marketing brochure is insufficiently attributed, and that the first two statements are mere puffery. ECF No. 27 at 3-4. Biomet does not specifically address the third statement regarding study results.

Contrary to Biomet's argument, the marketing brochure is sufficiently attributed to survive a motion to dismiss. Courts in like circumstances have found similarly broad descriptions of the source of an alleged misrepresentation to be adequate. *See, e.g.*, *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602, 626 (E.D. Pa. 2008) (applying New Jersey law) (actionable statements "made in various articles, conferences, and journals presented to the

---

3 Metcalfe adequately alleges that his doctor saw the Biomet marketing brochure. *See* Am. Compl. ¶ 40 ("These brochures were given to doctors around the world, including Plaintiff's orthopedic surgeon[.]").

medical community"). By quoting the marketing brochure at length, Metcalfe enables Biomet to identify which brochure he is suing over—giving Biomet "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Biomet references several inapposite decisions for its contrary argument. In *Johnson v. Brown & Williamson Tobacco Corp.*, the plaintiff failed to identify the statement giving rise to the alleged warranty—not merely the source of the statement. 122 F. Supp. 2d 194, 206 (D. Mass. 2000). So too in *Heisner ex rel. Heisner v. Genzyme Corp.*, No. 08-C-593, 2008 WL 2940811, at *8 (N.D. Ill. July 25, 2008). And in *Simmons v. Stryker Corp.*, the plaintiff "identifie[d] no source whatsoever of any alleged warranty." No. CIV. A. 08-3451 JAP, 2008 WL 4936982, at *2 (D.N.J. Nov. 17, 2008). Unlike in those cases, Metcalfe has identified the statements forming the alleged warranty and their source—Biomet's marketing brochures. *See* Am. Compl. ¶ 39.

Biomet next argues that the first and second statements in the marketing brochure—(1) that the Device "offers optimal joint mechanical restoration," and (2) that the Device "offers . . . ultra low -wear rates [*sic*] in vivo," Am. Compl. ¶ 39—are "classic puffery" and not actionable. ECF No. 27 at 3. According to Biomet, these are "[g]eneralized statements about safety, effectiveness, or quality[.]" *Id.* at 4.

"Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 945 (3d Cir. 1993). "[S]tatements that are nothing more than mere puffery are not considered specific enough to create an express warranty." *Smith*, 2011 WL 2119100, at *5; *see also In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, Civ. No. 08-939, 2009 WL 2940081, at *16 (D.N.J. Sept.

10, 2009) (dismissing breach of warranty claim based on defendant's statement that HD DVD Players were for "Today, Tomorrow, and Beyond," since statement is just "puffery"). A statement can amount to a warranty, even if unintended to be such by the seller, 'if it could fairly be understood . . . to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance.'" *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 570 (7th Cir. 1993) (quoting *Gladden v. Cadillac Motor Car Div., General Motors Corp.*, 83 N.J. 320, 326 (1980)).

Some courts note that puffery determinations may be reserved for the jury "except in clear cases[.]" *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723 (D.N.J. 2011) (denying motion to dismiss because plaintiff has provided more than bald assertions, and puffery determination is for the jury); *see also Union Ink Co. v. AT&T Corp.*, 352 N.J. Super. 617, 645 (App. Div. 2002) ("Whether the advertisements contained material misstatements of fact, or were merely puffing, as alleged by defendants, presents a question to be determined by the trier of fact."). This is a clear case.

The marketing brochure's statement that the Device "offers . . . ultra low -wear rates [*sic*] in vivo" is not puffery. This statement is analogous to the one in *Castrol* that the defendant's product offers "longer engine life and better engine protection." 987 F.2d 939. Here, as in *Castrol*, the statement is "both specific and measurable by comparative research." *Id.* at 946. It is specific in that the statement deals with a particular aspect of the product—its wear rate—rather than the Device's overall quality. *Cf. Guardavacarro v. Home Depot*, No. CV168796FLWDEA, 2017 WL 3393812, at *8 (D.N.J. Aug. 8, 2017) (statement that ladder has "durable shoes that rest flat on [a] slip resistant pad or [are] held in spur position with [the] SHU-Lock feature" specific enough to state breach of express warranty claim); *Stewart v. Smart*

*Balance, Inc.*, No. CIV.A. 11-6174 JLL, 2012 WL 4168584, at *11 (D.N.J. June 26, 2012) ("fat free" on milk container is actionable because it is "specific and guarantees the product falls into a precise category").

And it is measurable in that it "create[s] a necessary comparison to . . . competitors that is testable." *Brucker v. State Farm Mut. Auto. Ins. Co.*, No. 17CV00084, 2017 WL 7732876, at *3 (W.D. Pa. May 26, 2017); *see also Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 39 (1st Cir. 2000) (statement that "invites consumers to compare" product to competitors not puffery). Unlike in *Brucker*, which dealt with the motto "like a good neighbor, State Farm is there," Biomet's statement regarding the Device's wear rates does not "rel[y] on a subjective opinion about the goods provided." *Id.* Instead, a comparison of the Device's wear rate to the wear rates of competing products would reveal whether the Device's rate is "ultra low." This statement is actionable.

The other contested statement, that the Device "offers optimal joint mechanical restoration," is puffery. In New Jersey "advertising the advantages of a product, including claims of general superiority, constitutes puffing and is not actionable[.]" *Stiffel Co. v. Westwood Lighting Grp.*, 658 F. Supp. 1103, 1115 (D.N.J. 1987). That is all Biomet did here by labeling the Device's performance "optimal." Similar language has been consistently held unactionable. *See, e.g.*, *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, No. CIV. 14-277 NLH/KMW, 2015 WL 4914477, at *5 (D.N.J. Aug. 18, 2015) ("ideal" performance and "exceptional" quality); *Hughes v. Panasonic Consumer Elecs. Co.*, No. CIV.A. 10-846 SDW, 2011 WL 2976839, at *21 (D.N.J. July 21, 2011) ("industry leading" technology); *Wojcik v. Borough of Manville*, No. A-1627-08T3, 2010 WL 322893, at *3 (N.J. Super. App. Div. Jan. 29,

2010) ("one of the best" and "great" helmets). Biomet's statement that the Device "offers optimal joint mechanical restoration," is puffery.

Finally, Biomet does not argue that the third statement in its marketing brochure— "[m]any studies conducted over the last several decades have shown no definitive correlation of negative health issues to ion levels exhibited from metal-on-metal implants," Am. Compl. ¶ 39— is puffery. It is not. *See Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 540-41 (D.N.J. 2011) (statement that products are "'clinically proven' to help babies sleep better" is not puffery because statement is "both specific and measurable").

As discussed, the first statement in Biomet's marketing brochure is puffery, but the second and third statements are not.

## CONCLUSION

Biomet's motion to dismiss (ECF No. 9) is granted as to Counts 5 and 6. The motion is also granted as to the first statement in Biomet's marketing brochure, and as to the statements in the 2011 Journal of Arthroplasty article. The motion is denied as to the second and third statements in Biomet's marketing brochure. An appropriate order follows.

DATE: 15 January 2019

William H. Walls
Senior United States District Court Judge